**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**WALTER WASILUK,**

                                        **Plaintiff,**

         **v.**                                                                    **5:19-cv-280**

**CITY OF ONEIDA, NEW YORK,**

                                        **Defendant.**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

### I.      INTRODUCTION

**Allegations in the Pleadings**

Plaintiff commenced this action *pro se* asserting that his rights under the Eighth

Amendment's Excessive Fines Clause were being violated by the City of Oneida ("the

City") because the City had foreclosed on Plaintiff's real property for failure to pay property

taxes and was "seeking to vacate [Plaintiff] from [his] house so that they can sell it . . . ."

Compl. at pp. 3, 5.  Plaintiff asserts that the value of his property is far greater than the

unpaid taxes, and that the City's actions violate the Excessive Fines Clause because the

City is attempting to obtain much more than it is owed.  *See* Compl. at p. 5 ("[T]he City of

Oneida does not have a right to steal my house for its' [sic] own enrichment. Taxes owed

are a fraction of the house and properties [sic] worth.").

1

Despite Plaintiff's responses to the City's demand for interrogatories,[1] Plaintiff's *pro se* pleadings can also be interpreted as raising a Fourteenth Amendment due process challenge to the foreclosure proceedings, and a Fifth Amendment Takings Clause claim. *See generally*, Compl.; *see also* Pl. Mem. L. in Opp. to Sum. J., ¶ 5 ("Defendant violated 14th Amendment of due process [sic] by not giving adequate notice, not giving final tax amount, hiding the tax amount when asked on Jan 11, 2019 and by taking more than is owed."); ¶ 6 ("The 14th Amendment states that a court or government cannot take action to deny the public its rights. The Defendant violated the Plaintiffs' [sic] rights by not providing adequate notice and basically hiding the process from the Plaintiff and then one day saying vacate your home and took possession."); *id.*, ¶ 7 ("The seizure and sale of the Plaintiffs [sic] property for less than the assessed value is an unconstitutional taking and in this case how it was conducted in a underhanded way by the City of Oneida constitutes fraud, theft and is in line with a [sic] excessive fine as stated under the 8th and 14th Amendments of US Constitution."); *id.*, ¶ 11 ("Defendant ignored the fact that the US Constitution says that you cannot take more than what is owed.").

Plaintiff asserts that he is still living in his house, and seeks "the sum of $1,800,000.00, and to vacate any and all past and present taxes, and to restore my name

---

[1] In response to the City's demand for interrogatories asking Plaintiff to identify each right under the United States Constitution allegedly violated by Defendant and to describe how that right was violated, *see* Dkt. No. 43-3, at 8 (Interrogatory No. 1), Plaintiff responded: "The Eighth Amendment's Excessive Fines Clause was violated when the plaintiff informed the City of Oneida through this case on February 28, 2019, that is now illegal to take more than what is owed." Dkt. No. 43-10, at 1, ¶ 1.  Based on this, the City interprets Plaintiff's claim as under the Eighth Amendment's Excessive Fines Clause and not the Fifth Amendment's Takings Clause.  *See* City Mem. L. at 3 ("Here, plaintiff alleges not that the seizure and sale of his property for less than the assessed value is an unconstitutional taking, but instead that is constitutes an excessive fine under the Eighth Amendment.").

to the deed of my property at 513 West Elm Street, Oneida New York 13421."  Compl., at p. 5.

### Application for Injunctive Relief

Shortly after commencing this action, Plaintiff filed an application seeking a temporary restraining order (TRO) and a preliminary injunction "to force the Oneida City attorneys, and the City of Oneida, to cease and desist all foreclosure and deed transfers and eviction efforts and processes to the plaintiffs' [sic] residence at 513 W. Elm Street Oneida, NY 13421." Dkt. No. 5. Plaintiff indicated that he was seeking "declaratory and injunctive relief concerning a foreclosure conducted by the City of Oneida." *Id.* Plaintiff also indicated that he was seeking an injunction and TRO "on the unlawful eviction action, pending procedures to verify the validity of the underlying process as [it] has and will cause irreparable harm to Plaintiff, his wife and his 12 year old son." *Id.* The Court reviewed this application the same day and, because of procedural deficiencies outlined by the Court, denied it with leave to renew upon proper papers. *See* Dkt. No. 6. No further application in his regard was made.

### Previous Motion for Summary Judgment

The Court denied with leave to renew the City's previous motion for summary judgement because Plaintiff's responses to the City's "Statement of Undisputed Material Facts in Support of Motion for Summary Judgment" did not comply with the Local Rules, yet the City failed to provide Plaintiff the required *pro se* notice of the consequences of failing to properly respond to a motion for summary judgment.  *See* Dkt. No. 42.

### Current Motion for Summary Judgment

3

The City has renewed its motion for summary judgment, Dkt. No. 43, which Plaintiff opposes.  Dkt. No. 45.  The matter is now ripe for disposition, which the Court addresses without oral argument.

## II.      STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[A] fact is material if it might affect the outcome of the suit under the governing law*." Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)(quotation marks omitted).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

4

(1986).

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273.  To defeat a motion for summary judgment, the nonmoving party must identify probative, admissible evidence in the record from which a reasonable fact-finder could find in his or her favor. *Anderson*, 477 U.S. at 256–57.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998).

`Where a party is proceeding *pro se*, the Court is obligated to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## III.   BACKGROUND

Many of the following facts are taken from the City's Statement of Material Facts (Def. SOMF), Dkt. No. 43-40, that Plaintiff has either admitted or failed to properly controvert.[2]  The Court also relies upon the evidence submitted in connection with the

---

[2]The Court notes that Plaintiff filed an "Affidavit of Facts Disputing Motion for Summary Judgment," (Pl. Resp. SOMF), Dkt. 45-1, in which he provides responses to the City's Statement of Material Facts in

motion.

      Article 11 of the New York Real Property Tax Law ("NY RPTL") generally governs the procedures for the enforcement and collection of delinquent taxes in New York State. However, NY RPTL § 1104(2) allows a municipality to opt out of Article 11 and institute its own procedures for the enforcement and collection of the limited taxes. *See* NY RPTL § 1104(2).

      The City adopted Local Law No. 2 in June 1994.  Def. SOMF ¶ 1 (citing Def. Ex. 25[3]).  By Local Law No. 2, the City opted out of the procedures set forth in Article 11 of the NY RPTL and provided for its own procedures for the collection of municipal taxes.  *Id.* ¶ 2 (citing Def. Exs. 25-26).   Chapter C of the City's Charter contains the procedures for the

_____

numerically mirrored paragraphs.  However, some of the responses are insufficient to rebut the properly supported facts presented by the City.  In this regard, Plaintiff responds to some of the City's properly supported asserted facts with rhetorical questions. For instance, at paragraph 5, the City asserts: "The City Chamberlain conducted a public auction for the subject property on December 1, 2013." Def. SOMF ¶ 5 (citing Def. Ex. 28). Plaintiff responds: "How did the city stress to the Plaintiff the importance of this tax sale? How was this auction conducted?"  Pl. Resp. SOMF, ¶ 5.  Plaintiff also responds to some of the City's asserted facts with legal arguments.  For instance, at paragraph 11 the City asserts: "The City issued a tax warrant for 513 West Elm Street for delinquent 2014 property and school taxes." Def. SOMF ¶ 11 (citing Def. Ex. 29).  Plaintiff responds: "This case is not about tax warrants or delinquencies, but this case is about the undisputed fact that the law firm representing the City, failed to incorporate the Constitutional Law into the Cities [sic] body of Laws. One of which states that you cannot take more than what is owed."  Pl. Resp. SOMF, ¶ 11.  These responses are insufficient to rebut properly supported facts presented in the City's Statement of Material Facts. *See* N.D.N.Y. L.R. 56.1 (b)("The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. <u>The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>.")(emphasis in original).

[3]The City has not separately identified its exhibits by number but instead identifies them in and attaches them to the City's attorney's "Affidavit in Support of Motion for Summary Judgment," Dkt. 43-1. The Court's CM/ECF system identifies the affidavit as docket number 43-1, and the attached exhibits as separate sequentially numbered docket numbers starting with docket number 43-2 (the City's Exhibit 1), with the rest of the exhibits containing docket numbers one number above the exhibit number identified by the City.  For purposes of consistency, the Court will simply refer to the exhibit numbers and not the docket numbers.

enforcement and collection of delinquent property taxes. Def. Ex. 27.  The Charter further provides the procedures for issuance of tax warrants, tax sales, and redemption of real property. *Id*.  The City Charter sets forth the procedures for the City Chamberlain to follow in the case of unpaid taxes.  *Id.*, §§ 5.35-5.43.

Plaintiff purchased certain real property located at 513 West Elm Street in the City of Oneida in 1997. Def. SOMF ¶ 3 (citing Def. Ex. 21 at 39-43).  The property consists of a two-story wood frame house situated on a 3 ½ acre parcel (hereinafter referred to as "the subject property" or "513 West Elm Street").  Def. Ex. 21 at 39-43.   Plaintiff admits that he did not pay property taxes for the subject property between 2012 and 2018. *See* Def. Ex. 21 at 35 (did not pay property taxes from 2015 to 2018), 52 (did not pay 2012 property taxes reflected in the November 7, 2015 Tax Sale Certificate Lien), 54 (did not pay the 2014 property taxes reflected in the October 24, 2016 Tax Sale Certificate Lien), 56 (did not pay the 2013 property taxes by the redemption date of March 3, 3017), 60 (did not pay 2015 property taxes reflected in the February 28, 2017 Tax Sale Certificate Lien).

A tax warrant was issued by the Oneida City Chamberlain for 513 West Elm Street due to non-payment of property and school taxes for 2012. Def. SOMF ¶ 4 (citing Def. Ex. 28). The City Chamberlain conducted a public auction for the subject property on December 1, 2013. *Id.* ¶ 5 (citing Def. Ex. 28).  The City Chamberlain purchased 513 West Elm Street at the public auction on December 1, 2013 for the amount of the delinquent taxes.  *Id.* ¶ 6 (citing Def. Ex. 28).  On December 7, 2015, the City issued and filed a Tax Sale Certificate Lien for 513 West Elm Street. *Id.* ¶ 7 (citing Def. Ex. 28).  As reflected in the Tax Sale Certificate Lien, the City was entitled to a deed to 513 West Elm Street if the

2012 delinquent property taxes were not redeemed within two (2) years, or by December

7, 2017.  *Id.* ¶ 8 (citing Def. Ex. 28).  The amount of the 2012 delinquent property taxes

was $2,303.19.  Def. Ex. 28.  In support of its contention that "Plaintiff does not dispute

receipt of the 2015 Tax Sale Certificate Lien," Def. SOMF at ¶ 9, the City cites to Plaintiff's

deposition, Def. Ex. 21, at pages 52-53.[4]  Plaintiff responds, as he stated at his deposition,

---

[4] In support of the instant motion, the City presents selected portions of Plaintiff's deposition.  At pages 52-53, the deposition picks up in the middle of a question as follows:

> Q. . . . right about there (indicating), sir, two years from the date --- why don't you take a look at that.
>
> A. Okay.
>
> Q. Okay. Did you have an opportunity to review that, sir?
>
> A. Yes.
>
> Q. All right. And do you see where you were given notice that you had 2 years to redeem the taxes on the property?
>
> A. Yes.
>
> Q. All right. And, sir, it says the total amount of taxes due is about $2,300?
>
> A. Yes.
>
> Q. Okay. Did you pay the $2,300 within 2 years?
>
> A. No.
>
> Q. Okay. And that's because you didn't have the money?
>
> A. Correct.
>
> Q. All right. And this is from December 7, 2015. Do you recall receiving this Tax Sale Certificate Lien?
>
> A. I do not recall.
>
> Q. Any reason to believe that it wasn't sent to you?
>
> A. No.

Def. Ex. 21, at pp. 52-53.

that he does not recall receipt of the 2015 Tax Sale Certificate Lien.  Pl. Resp. SOMF, ¶ 9.

Although Plaintiff states that he does not recall receiving the December 7, 2015 Tax Sale

Certificate Lien, he concedes that he has no reason to believe that this document was not

sent to him. Def. Ex. 21, at pages 52-53. Further, there is no dispute that Plaintiff did not

pay the delinquent 2012 taxes.  Def. SOMF at ¶ 10 (citing Def. Ex. 21, at p. 52).

The City issued a tax warrant for 513 West Elm Street for delinquent 2014 property

and school taxes.  Def. SOMF at ¶ 11 (citing Def. Ex. 29).  The City Chamberlain

conducted a public auction of 513 West Elm Street on December 1, 2015. *Id.* ¶ 12 (citing

Def. Ex. 29).  The City Chamberlain purchased 513 West Elm Street at the public auction

on December 1, 2015 for the amount of the delinquent property taxes.  *Id.* ¶ 13 (citing Def.

Ex. 29).  The amount of the delinquent property taxes for 2014 was $2,104.03.  Def. Ex.

29.  On October 24, 2016, the City issued and filed another Tax Sale Certificate Lien on

513 West Elm Street. Def. SOMF at ¶ 14 (citing Def. Ex. 29).   As stated within this Tax

Sale Certificate Lien, the City was entitled to a deed to 513 West Elm Street if the 2014

delinquent taxes were not redeemed within two (2) years, or by October 24, 2016. *Id.* ¶ 15

(citing Def. Ex. 29).  At his deposition, Plaintiff agreed with defense counsel that this Tax

Sale Certificate Lien placed Plaintiff on notice that he had two years to redeem the

property, but Plaintiff testified that he did not recall receiving this Tax Sale Certificate Lien.

*See* Def. Ex. 21 at p. 54.  Again, Plaintiff testified that he did not have any reason to

believe that this document was not sent to him. *Id*.  Plaintiff admits that he did not pay the

delinquent 2014 taxes. Def. SOMF at ¶ 17.

_____

9

The City issued another tax warrant for 513 West Elm Street for delinquent 2015 property and school taxes.  *Id.* at ¶ 18 (citing Def. Ex. 30).  The City Chamberlain conducted a public auction of 513 West Elm Street on December 1, 2016. *Id.* at ¶ 19 (citing Def. Ex. 30).   The City Chamberlain purchased 513 West Elm Street at the public auction on December 1, 2016 for the amount of delinquent taxes.  *Id.* at ¶ 20 (citing Def. Ex. 30). The amount of the delinquent 2015 property and school taxes was $2,281.08. Def. Ex. 30.  On February 28, 2017, the City issued and filed another Tax Sale Certificate Lien on 513 West Elm Street. Def. SOMF at ¶ 21 (citing Def. Ex. 30).  As stated within this Tax Sale Certificate Lien, the City was entitled to a deed to the subject property if the 2015 delinquent taxes were not redeemed within two (2) years, or by February 28, 2019.  *Id.* at ¶ 22 (citing Def. Ex. 30).  At his deposition, Plaintiff testified that he did not recall receiving the February 28, 2017 Tax Sale Certificate Lien, but he stated that he had no reason to believe that it was not sent or that it was not delivered to his home.  Def. Ex. 21 at p. 59. Plaintiff did not pay the delinquent 2015 taxes. Def. SOMF at ¶ 24 (citing Def. Ex. 21 at p. 60).

The City Chamberlain provided Plaintiff with notification of the 2013 and 2014 Tax Sale Certificates by letter dated February 13, 2017. *Id.*, at ¶ 25 (citing Def. Ex. 31).  With this letter, the City Chamberlain provided Plaintiff with copies of the 2013 and 2014 Tax Sale Certificates and reminded him his outstanding amounts for 2013 needed to be paid no later than March 3, 2017 and the 2014 delinquent amount by April 3, 2017.   Def. Ex. 31.  The letter further warned Plaintiff that the City would go forward with procedures to take the subject property for unpaid taxes if the delinquent tax payments were not made.

10

*Id.*  Plaintiff testified at his deposition that he did not recall receiving the February 13, 2017 letter from the City Chamberlain, but he also stated that he had no reason to believe that it was not sent to him or delivered to his home.  Def. Ex. 21 at p. 58.  Plaintiff did not redeem these delinquent taxes. Def. SOMF at ¶ 29 (citing Def. Ex. 21 at 56-58, 64). Further, Plaintiff did not contact the City Chamberlain until he received a notice to vacate the subject property in January 2019. *Id.* ¶ 30 (citing Def. Ex. 21 at 56-58, 64).[5]

By certified letter dated October 25, 2017, the City notified Plaintiff it had advertised the subject property for tax sale for non-payment of the 2015 taxes. Def. SOMF at ¶ 31 (citing Def. Ex. 32).  Plaintiff was specifically advised that the property had to be redeemed by November 30, 2017 or it would be deeded to the City.  Def. Ex. 32.  Plaintiff contends in his response to the City's SOMF ¶ 31 that he does not recall receiving that letter, but the City has provided a copy of that letter and Plaintiff's signed receipt for the certified letter.  Def. Ex. 32.  There is also a dispute as to whether Plaintiff read the letter, and given the truncated deposition pages provided in support of the motion it is unclear whether Plaintiff testified that he "would have read" the letter if he had received it.  *See* Def. Ex. 21 at 63.[6]  Nonetheless, there is no dispute that Plaintiff did not pay the

---

[5]Plaintiff contends in his response to Defendant's SOMF at ¶ 30, without citation to the record where evidence of his factual contentions could be found, that:

> The City did not contact the Plaintiff with a final notice. The City did not contact the Plaintiff with final tax total. The City was unwilling to provide the total tax owed when Plaintiff went to Chamberlains [sic] office in January 2019. But the City was willing to Sell the Plaintiff[']s property to Amelia Wasiluk. The Plaintiff sensed a hostility from the City.

Pl. Resp. SOMF ¶ 30.

[6] Plaintiff accurately indicates that because pages 61 and 62 had not been provided, it is unclear what

delinquent 2015 taxes.  Def. SOMF at ¶ 34.

513 West Elm Street was deeded to the City on November 20, 2018. *Id.* ¶ 35 (citing Def. Ex. 33).[7]  The deed was recorded with the Madison County Clerk on December 9, 2018. *Id.* ¶ 36 (citing Def. Ex. 33).  The City served Plaintiff with a Notice to Vacate 513 West Elm Street on or about January 4, 2019. *Id.* ¶ 37 (citing Def. Ex. 34).  The City provided Plaintiff ten (10) days to vacate 513 West Elm Street. *Id.* ¶ 38 (citing Def. Ex. 34). Plaintiff maintains that after receiving the notice to vacate, he went to the City Chamberlain's office on January 11, 2019 attempting to obtain information on the delinquent taxes.  *See* Compl. p. 5 ("On January 11, 2019, I went to the City of Oneida, City Hall to find out what the total tax amount is due.").   He contends that the City Chamberlain "told [him] that [he did] not own [his] property as of November 2018 and would not tell [him] the total amount owed."  *Id.*   By letter dated January 22, 2019, Plaintiff wrote the City's attorneys alleging it failed to follow the legal procedures required under Article 11 of the NY RPTL, including a requirement of a tax foreclosure proceeding. Def. Ex. 35.  Plaintiff has submitted two handwritten, unverified statements from individuals indicating that in January 2019 they offered Plaintiff the money that he needed to pay his

---

Plaintiff is referring to when he said he would have read it.

[7] In response to this properly supported statement of fact, Plaintiff indicates:

> Plaintiffs' [sic] property was taken by the City without fair warning or notice, nor was date given when this theft would occur. Since Plaintiff was informed about everything else, why not inform the Plaintiff that his property was about to be taken on November 20, 2018? Who made that decision not to inform the Plaintiff?

Pl. Resp. SOMF, ¶ 35.  The Court will take Plaintiff's arguments into account when it conducts its analysis.

property taxes so he would not lose his house. *See* Pl. Ex. 4, Dkt. No. 45-5.

The City commenced a summary proceeding to recover possession of 513 West

Elm Street from Plaintiff by Notice of Petition dated March 12, 2019. Def. SOMF ¶ 39

(citing Def. Ex. 36).  In Plaintiff's Answer to the Petition, Plaintiff alleged, *inter alia*, that the

City violated his Eighth Amendment rights and failed to follow the tax foreclosure

procedure set forth in the New York Real Property Tax Law. *Id.* ¶ 40 (citing Def. Ex. 37).[8]

Plaintiff also demanded in his Answer that "the City of Oneida cease and desist all actions

of illegal acquisition and any and all actions and attempts to evict Walter Wasiluk

(Respondent) from his property at 513 West Elm Street . . . on the grounds that 'another

action is pending' between the same parties on the same cause of action." Def. Ex. 37.  In

this regard, Plaintiff asserted:

> 1. The City of Oneida (Petitioner) has knowingly and willfully failed to disclose to
> City Court of Oneida, that I Walter Wasiluk (Respondent) have filed a lawsuit in U.S.
> District Court for the Northern District of New York, against the City of Oneida on
> February 28, 2019, (case # 5:19-cv-00280) because the City of Oneida has violated
> my constitutional rights by seizing my property at 513 West Elm Street Oneida N.Y.
> 13421. The assessed taxable value of my property by the City of Oneida is
> $62,000.00 and approximate market value is $85,000.00 to $125,000.00. The total
> tax owed is $16,843.17. Under the recent law enacted by the U.S. Supreme Court
> on February 20, 2019, and incorporated to all 50 states and municipalities, under
> the U.S. Constitutions' [sic] the [sic] Eighth Amendment's Excessive Fines Clause, it
> is now illegal to seize property that far exceeds the amount owed. This is the end of
> legalized theft in this country (TIMBS v. INDIANA).
>
> 2. A final notice and the total tax owed and notice of foreclosure proceeding was
> never sent by the City of Oneida to Walter Wasiluk as mandated by (New York Real
> Property Tax Law § 1125), so I was never given a final opportunity to redeem my

---

[8]In response to this properly supported statement of fact, Plaintiff asserts: "The first City Judge recused
himself from Plaintiffs' [sic] case. The second City Judge refused to let Plaintiff speak and ignored Plaintiffs'
[sic] pleas. The Judge very quickly went through the motions and was not interested in anything the Plaintiff
had to say." Pl. Resp. SOMF ¶ 40.

property. Instead on January 8, 2019, I received a letter from the Oneida City Attorney, Nadine C. Bell to vacate my property within 10 days and that the City.of Oneida has taken ownership of my property back in November of 2018. How shocking that was and is to this day, the thought of me, my wife and 12 year old son being homeless.

3. After receiving notice to vacate on 01/08/19, I went to the Oneida City Chamberlain on 01/11/19 to inquire as to the amount owed and the Chamberlain refused to tell me. I wanted to correct this issue but the City of Oneida refused to work with me.

Def. Ex. 37.  In this Answer, Plaintiff requested that the Oneida City Court dismiss or stay the action in that court "pending the outcome of the U.S. Court case," then, Plaintiff contended, "a negotiation where a settlement is reached OR vacate all past taxes owed and reinstate my ownership of my property OR allow me Walter Wasiluk to fix up my property, sell it and pay Oneida City its' [sic] taxes within 2 years OR allow me to pay taxes owed within 2 months and restore my name on the deed, can be discussed." *Id.*

Plaintiff also provides a document purportedly from the Oneida City Court eviction proceeding entitled "Further Answer to Petitioner's Memorandum of Law," dated April 10, 2019. Pl. Ex. 2, Dkt. No. 45-3.  This document provides:

The Oneida City Charter deviates from the standard practice of law. A fundamental section and or a statement on proper NOTICE is missing from the Oneida City Charter, therefore a [sic] adequate opportunity to redeem the home and property is denied to the rightful and just owner of the property. According to the City of Oneida, I have received only one NOTICE since October of 2017. According to the Oneida City Charter Section 5.37, the public received at least SIX (6) such NOTICES. Also according to the Oneida City Charter Section 5.41 at least TWO (2) more public NOTICES are given. Therefore as evident and proof in the Oneida City Charter, there are no provisions for the proper NOTIFICATION to the owner. I, Walter Wasiluk, have not received just and proper NOTICE of the City of Oneida intentions. To this date the City of Oneida has not sent me, Walter Wasiluk, the total taxes owed and the date by which the taxes must be paid by. I therefore ask the Oneida City Court to stop this eviction proceedings [sic], restore my ownership of home and property and allow for a fair and reasonable solution to this tax matter.

14

Pl. Ex. 2.

At his deposition, Plaintiff admitted that he made the same Eighth Amendment Excessive Fines Clause and Fourteenth Amendment Due Process Clause arguments in the action to recover possession of the subject premises as he is making in the present action. Def. Ex. 21 at 72-74.

## IV.   DISCUSSION

### a.  Due Process

The Court starts with Plaintiff's allegation he was deprived of adequate notice of the underlying foreclosure proceedings.  The Due Process Clause of the United States Constitution provides that no state shall "deprive any person of  life, liberty, or property property, without due process of law." U.S. Const. amend. XIV, § 1.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

There is no dispute that by Local Law No. 2, the City opted out of the procedures set forth in Article 11 of the NY RPTL and provided for its own procedures for the collection of municipal taxes.  Chapter C of the City's Charter contains the procedures for the enforcement and collection of delinquent property taxes, including the procedures for

issuance of tax warrants, tax sales, and redemption of real property.  *See* Oneida City Charter §§ 5.35-5.43.

As indicated above, Plaintiff admits that he did not pay property taxes for the subject property between 2012 and 2018.  Oneida City Charter § 5.36 provides that "[w]henever any . . . tax . . . shall remain unpaid on the first day of September, the City Chamberlain shall proceed on or before December 1 to advertise and sell the lands upon which the same was imposed for the payment of such tax . . . ."   Section 5.37 provides that "[t]he City Chamberlain shall cause to be published a notice of such sale containing a description of the lands to be sold and specifying the time and place for sale, in the official newspapers of the City, once a week for at least three successive weeks, immediately prior to date of sale, and shall also post such notice of sale in at least three public places in the City at least 21 days before the day of sale. On the day named, the City Chamberlain shall commence the sale of such lands and shall continue such sale from day to day until the whole thereof shall be sold."  This section also provides that "[b]efore the sale, the owner of any parcel of land or his representatives may avoid the sale thereof by paying the tax or taxes to the City Chamberlain with all accrued interest, fees, additions, and expenses."

Section 5.38 provides:

Each parcel shall be sold at public auction to the owner, his representatives or assigns or be bid in by the City Chamberlain in the name of the City for the gross amount of the taxes, plus interest, penalties and all other charges allowed by law with respect thereto.  A purchaser on such sale, as permitted herein, shall make payment to the City Chamberlain immediately after each parcel is struck off. In default of such payment, the City Chamberlain shall offer the parcel for sale again to any eligible bidder, and if there is none, then

said City Chamberlain shall bid in said parcel on behalf of the City as hereinbefore set forth. Any and all parcels so acquired by the City shall be under its care and control and may be leased or sold and conveyed by it.

Section 5.39 provides:

The proceeds of the sale of each parcel, other than those struck off to the City, shall be applied to the payment of the expenses of the sale as herein provided and the extinguishment of the tax, penalty or interest for which it was sold. In case any taxes shall be assessed and levied on real estate which has been sold for taxes, subsequent to such sale and before the redemption thereof or conveyance thereof to the purchaser and the same shall be unpaid, the person redeeming shall pay the same; otherwise, the purchaser shall pay the same before he shall receive his conveyance of the same.

Here, other that the October 25, 2017 letter in which the City notified Plaintiff it had advertised the subject property for tax sale for non-payment of the 2015 taxes, Def. SOMF at ¶ 31 (citing Def. Ex. 32), there is no affirmative proof that the City Chamberlain published or posted notice of the other two tax sales. But there is no dispute that the City Chamberlain conducted three public auctions of the subject property at which time the City Chamberlain paid the outstanding property taxes.

Section 5.40 of the City Charter, which deals with Redemption of Lands, provides:

The owner of or any person interested in or having a lien upon any parcel or lot so sold may redeem the same from such sale at any time within two years by paying to the City Chamberlain for the use of the purchaser or his assigns the sum mentioned in the certificate as having been bid for the premises with interest thereon at the rate of 10% per annum from the day of the sale, together with any tax or assessment or other amount as shall have accrued thereon, with interest at the rate of 10% per annum upon such tax or assessment or other amount from the time of payment. In case of the redemption of any land sold for taxes, as herein provided, by the person who was the owner thereof at the time of the sale, the City Chamberlain shall give such owner a receipt for the amount paid by him to effect such redemption, and on the production thereof by such owner to him, the County Clerk shall cancel the certificate of sale by a proper entry at the foot of the record of

17

such certificate in his office.

Section 5.41 of the City Charter, which deals with "Notice of Redemption," provides:

At least three months before the expiration of the time for the final redemption of any parcels or lots so sold, the City Chamberlain shall commence the publication of a notice of redemption from such sales, which shall show the year when the sale took place and the last day for the redemption of the lands not already redeemed by the owners, without other or further description, and such notice shall be published at least twice in each of said three months in the official newspapers of the City. The publication of such notice shall bar and preclude any and all persons except the purchaser on such sale or his assigns or the person finally redeeming from claiming any interest in or lien upon such lands or any part thereof, in case said lands shall not be redeemed from such sale herein before provided.

Section 5.42 of the City Charter provides:

If any parcel or lot so sold shall not be redeemed as herein provided, the City Chamberlain, immediately after the expiration of the said two years, shall execute and deliver to the City or its assigns a conveyance of the real estate sold, which conveyance shall vest in the grantee an estate in fee. All purchases made for the City in any year shall be included in one conveyance, and no fee shall be charged therefor. Every such conveyance shall be executed by the City Chamberlain, and the execution thereof shall be acknowledged before some officer authorized to take and certify acknowledgments of instruments for record in said county, and such conveyance shall be conclusive evidence that the sale and subsequent proceedings were regular and presumptive evidence that all the previous proceedings were regular and according to law. Any such conveyance may be recorded in like manner and with like effect as any other conveyance of real estate. In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become absolute and the occupant and all other persons barred forever. The City or its assigns, as the case may be, shall be entitled to have and to possess the granted lands from and after the execution of such conveyance and may cause the occupants of such lands to be removed therefrom and the possession thereof delivered to it in the same manner and by the same proceedings and by and before the same officers as in the case of a tenant holding over after the expiration of his term without permission of his landlord.

It is a "well-settled proposition that an owner of property is charged with knowledge of statutory provisions affecting the control or disposition of his or her property." *Sheehan v. Suffolk Cnty.*, 67 N.Y.2d 52, 58 (N.Y. 1986)(citations omitted). "Due process does not require that every taxpayer be advised of the possible consequences attaching to a default in payment." *Id.,* at 59  (citations omitted).  The applicable procedures here set forth a two-year redemption period from specific dates connected with the sales of the subject property, and although Plaintiff contends that he does not recall receiving the Tax Sale Certificate Liens issued in connection with these sales, he testified that he has no reason to believe that these documents were not sent to his residence.  Because Plaintiff admits that he did not pay property taxes between 2012 and 2018, and because he concedes he has no reason to believe that the Tax Sale Certificate Liens were not sent to his residence, his broad conclusory allegation that he did not receive notice of the forfeiture proceedings is insufficient to create a genuine question of material fact as to his receipt of notice.  The same is true for the City Chamberlain's February 13, 2017 letter which provided Plaintiff with notification of the 2013 and 2014 Tax Sale Certificates and reminded Plaintiff his outstanding amounts for 2013 needed to be paid no later than March 3, 2017 and the 2014 delinquent amount by April 3, 2017.

Furthermore, the City has presented evidence by way of a certified-mail receipt signed by Plaintiff that the City notified him by certified letter dated October 25, 2017 that the City had advertised the subject property for tax sale for non-payment of the

19

2015 taxes, and that the property had to be redeemed by November 30, 2017 or it would be deeded to the City.  *See* Def. Ex. 32.   Although Plaintiff contends that he does not recall receiving this letter, in light of his signature on the certified-mail receipt no reasonable fact finder could conclude that the certified letter was not delivered to Plaintiff.  When resolving ambiguities in the evidence in Plaintiff's favor, and drawing reasonable inferences on his behalf, the evidence does not support the conclusion that Plaintiff actually read the October 25, 2017 certified letter.  But actual knowledge of the underlying proceeding is not required.  "In the context of real estate foreclosures, due process does not require actual notice." *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)(citing *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S. Ct. 694, 151 L.Ed.2d 597 (2002)).  "Rather, the government must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L.Ed. 865 (1950)). "Indeed, '[t]he reasonableness and hence the constitutional validity of [the] chosen method [of notice] may be defended on the ground that it is in itself reasonably certain to inform those affected.'" *Id.* (quoting *Mullane*, 339 U.S. at 315, and  citing *Mullane*, 339 U.S. at 315 ("[W]hen notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.")).  A reasonable fact finder could only conclude that the certified letter sent to Plaintiff was reasonably calculated to apprise Plaintiff of the pendency of the tax foreclosure proceeding and to afford him an opportunity to redeem the subject

property for the amount of the delinquent taxes before the date that the property would be deeded to the City.  Whether Plaintiff read the letter and failed to act, or simply ignored the letter, is of no moment. The letter sufficiently informed Plaintiff of what he needed to do to prevent the deed to his property to be delivered to the City.  This satisfied due process.  *See Tupaz v. Clinton Cty., New York*, 499 F. Supp. 2d 182, 189 (N.D.N.Y. 2007), *aff'd sub nom. Miner v. Clinton Cty., N.Y.*, 541 F.3d 464 (2d Cir. 2008)("A certified mailing sent to the address that the landowner gives to the municipality is sufficient to satisfy due process.")(citing *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708,1713–14, 164 L.Ed.2d 415 (2006)("It is true that this Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent."); *Dusenbery*, 534 U.S. at 170 (certified mail sent to a known address satisfies due process)).   Further, there is no dispute that Plaintiff did not pay the delinquent 2015 taxes before 513 West Elm Street was deeded to the City on November 20, 2018.

Even accepting Plaintiff's contention that he went to the City Chamberlain's office on January 11, 2019 attempting to obtain information on the delinquent taxes but was rebuffed, this occurred after the City obtained the deed to 513 West Elm Street on November 20, 2018 and the deed was recorded with the Madison County Clerk on December 9, 2018.  Thus, in accordance with Section 5.42 of the City Charter, because Plaintiff failed to redeem within the time specified, the sale and conveyance of 513 West Elm Street to the City became absolute and the City received an estate in fee in this property.  *See, e.g., Sheehan*, 67 N.Y.2d at 59 ("It is not unjust for a legislative body to

21

declare that once a taxpayer has abandoned rights in property after [a redemption] period has expired, the taxing authority may take a deed in fee. At that point, the former owner can no longer claim any just compensation upon its resale.  Full forfeiture has already occurred upon the taxpayer's failure to redeem the property before it has been resold.");  *Ellis v. City of Rochester*, 227 A.D.2d 904, 904, 643 N.Y.S.2d 279, 279 (4th Dept. 1996) ("[W]here, as here, the taxpayer neither attempted to redeem her property nor interposed an answer, the City of Rochester is entitled to a deed conveying an estate in fee simple absolute and the taxpayer is forever foreclosed of her interest in the property.")(cleaned up).  Whether Plaintiff had, at that time, the money he needed to pay his property taxes is irrelevant because the foreclosure proceeding had already concluded.  As the City Chamberlain purportedly told Plaintiff, he did not own the property at that time.  Because Plaintiff received sufficient notice of the tax foreclosure proceedings and of the steps he needed to take to prevent the subject property from being deeded to the City, Plaintiff's due process claim is insufficient and summary judgment on this claim is granted to the City.  *See, e.g., Miner*, N.Y., 541 F.3d at 474.[9]

---

[9]The Second Circuit stated in *Miner*:

> We agree with the District Court in both cases that defendants did not infringe on plaintiffs' rights to due process or equal protection by denying them rights of redemption after the default judgments were entered. Defendants provided plaintiffs adequate notice of foreclosure and an opportunity to be heard, which is all that due process requires. *See Tupaz*, 499 F.Supp.2d at 191. Once judgment was entered, plaintiffs lost their rights to the property under New York law and had no further right to redemption. *Id.; see also* N.Y. Real Prop. Tax Law § 1131 (extinguishing "all right, title, and interest and equity of redemption" in a foreclosed property). We find no due process violation because defendants received adequate notice and an opportunity to be heard prior to the default judgment.

**b.  Eighth Amendment Excessive Fines & Fifth Amendment Takings**

For purposes of this motion, the Court accepts Plaintiff's contention in his Answer
to the City's eviction petition that the assessed taxable value of his property was
$62,000.00 with an approximate market value of $85,000.00 to $125,000.00, and the
total tax owed to the City at the time was $16,843.17.  The City argues that "at a public
auction, plaintiff's property was sold to the City of Oneida for exactly the amount of the
taxes owed," Def. Mem. L. at 5-6, and that the Oneida City Code "does not provide
plaintiff with any property interest in any surplus which may be obtained following the
ultimate sale his property." *Id.* at 5.  Plaintiff contends, essentially, that the City's
retention of the equity in his real property beyond that which was owed for delinquent
taxes ("surplus equity") constitutes an unconstitutionally excessive fine under the Eighth
Amendment and an unconstitutional taking under the Fifth Amendment.

"[T]he States have a very wide discretion in the laying of their taxes. When
dealing with their proper domestic concerns, and not ... violating the guaranties of the
Federal Constitution, the States have the attribute of sovereign powers in devising their
fiscal systems to ensure revenue and foster their local interests." *Allied Stores of Ohio,
Inc. v. Bowers*, 358 U.S. 522,526 (1959). "Federal courts have not been willing to
disturb state tax laws and find constitutional violations." *Reinmiller v. Marion Cnty.,
Oregon*, No. 05-1926-PK, 2006 WL 2987707, at *3 (D. Or. Oct. 16, 2006)(citing *Nelson
v. City of New York*, 352 U.S. 103 (1956)).

Citing to *Coleman ex rel. Bunn v. District of Columbia*, 70 F. Supp. 3d 58, 80
(D.D.C. 2014), the City argues that "a tax debtor has no interest in any surplus obtained

from a tax foreclosure unless state law provides such interest and thus, a local authority's failure to remit the amount of any surplus equity to a tax debtor does not constitute an unconstitutional taking where no such state law exists." Def. Mem. L. at 2-3.  From this, the City argues that as a matter of New York law, "'a debtor's rights [in property] are extinguished at the time his right to redeem the [p]roperty expires.'" *Id.* (quoting *In re Martyak*, 432 B.R. 25, 40 (Bankr. N.D.N.Y. 2010)(cleaned up).  Plaintiff has not specifically addressed this argument.

In *Coleman*, the District Court addressed a series of Supreme Court decisions applying the Takings Clause to tax sales.  *See Coleman*, 70 F. Supp. 3d at 77-81.  This included *United States v. Lawton*, 110 U.S. 146 (1884) and *Nelson*, 352 U.S. 103.  *See id.*  In *Lawton*, the Supreme Court examined a federal statute that permitted the federal government to engage in tax sales to recover delinquent tax debts. *See id.* at 77.  The Supreme Court had previously interpreted this statute to mean that the former owner "would be entitled to the surplus money" after the tax sale. *Id.* (citing United *States v. Taylor*, 104 U.S. 216 (1881)). There, an heir to an individual whose property was sold under the same statute sought "surplus proceeds of the sale" and was denied. *Id.* (citing *Lawton*, 110 U.S. at 149).  As the court in *Coleman* indicated, in light of the fact that the statute required that the surplus be provided to that individual, the Supreme Court stated that "[t]o withhold the surplus from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation." *Id.* (quoting *Lawton*, 110 U.S. at 150).

24

The court in *Coleman* noted that in *Nelson*, the City of New York had utilized a tax-sale procedure through which the City retained one of the properties at issue and retained the proceeds of the sale of the other property, which 'far exceed[ed] in value the amounts due.'" *Id.* (quoting *Nelson*, 352 U.S. at 109). The plaintiffs alleged that this constituted a violation of the Due Process Clause and the Takings Clause. *See id.* "As to the takings issue, the Supreme Court examined *Lawton*, but noted that 'the statute involved in that case had been construed ... to require that the surplus be paid to the owner.'" *Id.* (quoting *Nelson*, 352 U.S. at 110).  As the court in *Coleman* indicated:

> The *Nelson* Court stated:
>
>> But we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale. In *City of New York v. Chapman Docks Co.*, an owner filed a timely answer in a foreclosure proceeding, asserting his property had a value substantially exceeding the tax due. The Appellate Division construed [the tax-sale statute] to mean that upon proof [that the sale value substantially exceeded the amount of taxes due] a separate sale should be directed so that the owner might receive the surplus.
>
> [*Nelson*, 352 U.S. at 110](citation omitted). The statute had therefore previously been interpreted to provide an avenue for the recovery of surplus equity. The Supreme Court went on:
>
>> What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem *or to recover[ ] any surplus*, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.
>
> *Id.* (emphasis added).

*Coleman*, 70 F. Supp. 3d at 77–78.  The court in *Nelson* recognized, as did the New York Court of Appeals, that this is "a harsh statute," but concluded, as did the Court of Appeals, "that relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 352 U.S. at 110–11; *see City of New York v. Nelson*, 127 N.E.2d 827, 828 (N.Y. 1955)("Unfortunately, the power to afford relief here is not confided to the courts. The result suggests the need of legislation liberalizing the right of redemption, or giving to city officials the power to ameliorate such extreme hardships in appropriate cases."), *aff'd*, 352 U.S. 103 (1956).

The court in *Colemen* indicated that it drew two clear principles from the Supreme Court's decisions in *Lawton* and *Nelson*:

> *Nelson* makes clear that a Takings Clause violation regarding the retention of equity will not arise when a tax-sale statute provides an avenue for recovery of the surplus equity. 352 U.S. at 109, 77 S.Ct. 195. *Lawton* makes clear that a Takings Clause violation will arise when a tax-sale statute grants a former owner an independent property interest in the surplus equity and the government fails to return that surplus. 110 U.S. at 149, 3 S.Ct. 545.

*Coleman*, 70 F. Supp. 3d at 80.  However, the court in *Coleman* posited the question presented in that case: "What if the tax-sale statute does not provide a right to the surplus and the statute provides no avenue for recovery of any surplus?" *Coleman*, 70 F. Supp. 3d at 80.  The court in *Coleman* stated:

> A property interest in equity could conceivably be created by some other legal source. In that circumstance, failure to provide an avenue for recovery of the equity would appear to produce a result identical to *Lawton*: Property to which an individual is legally entitled has been taken without recourse. The

26

issue, then, is whether Mr. Coleman has a property interest in his equity and, if so, whether an unconstitutional taking of that property has been alleged.

The Fifth Amendment to the United States Constitution provides, in relevant part, "nor shall private property be taken for public use, without just compensation." Inherent in the Amendment, then, is that "property" must be at issue. "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). *Lawton* indicated that such an interest may be created by a statute that requires the refunding of surplus equity after a tax sale. *See Lawton*, 110 U.S. at 149, 3 S.Ct. 545. Mr. Coleman contended that he has a protected property interest in the equity in his home based on principles of D.C. law and decisions of the D.C. Court of Appeals. . . .   Mr. Coleman similarly argued that he establishes the remaining elements of a Takings Clause claim: that his property was "taken"; that he was provided no "just compensation"; and that the taking was not for a "public purpose."

*Coleman*, 70 F. Supp. 3d at 80–81 (footnote and record citations omitted).

The court in *Coleman* further indicated:

Only a handful of post-*Balthazar*[10] decisions have addressed a federal Takings Clause claim regarding the taking of equity without avenue for its recovery. Three decisions have denied such claims on the grounds that *Nelson* foreclosed such a claim. *See Reinmiller v. Marion Cnty.*, No. CV–05–1926, 2006 WL 2987707, at *3 (D. Or. Oct. 16, 2006); *City of Auburn v. Mandarelli*, 320 A.2d 22, 32 (Me.1974); *Ritter v. Ross*, 207 Wis.2d 476, 558 N.W.2d 909, 912 (1996). All three, however, recognized that such a claim could be stated where a state statute or constitutional provision granted an interest in the surplus equity. *See Reinmiller*, 2006 WL 2987707, at *3; *City of Auburn*, 320 A.2d at 32; *Ritter*, 558 N.W.2d at 912–13.

*Coleman*, 70 F. Supp. 3d at 79–80.

Here, the applicable procedures do not give Plaintiff an avenue to recover the

surplus equity in his property.  Rather, these procedures provide that upon an *in rem* tax

foreclosure where the property owner fails to redeem the property within a specific period

---

[10] The court is referring to *Balthazar v. Mari Ltd.*, 396 U.S. 114, 90 S.Ct. 397, 24 L.Ed.2d 307 (1969).

of time by paying the delinquent taxes, the property is conveyed to the City, the City obtains an estate in fee in the property, and the City's rights in the property are absolute. For reasons discussed above, Plaintiff received sufficient notice of the foreclosure proceedings including that the deed to the subject property would be conveyed to the City upon Plaintiff's failure to redeem it by specific date.  "It is not unjust for a legislative body to declare that once a taxpayer has abandoned rights in property after such a period has expired, the taxing authority may take a deed in fee." *Sheehan*, 67 N.Y.2d at 59.   "At that point, the former owner can no longer claim any just compensation upon its resale.  Full forfeiture has already occurred upon the taxpayer's failure to redeem the property before it has been resold." *Id.* (citations omitted).  Furthermore, "[t]here is no constitutional prohibition against such a full forfeiture."  *Id.*, at 60 (citing, *inter alia*, *Nelson* and *Lawton*).  "Once taxpayers are provided with notice and an opportunity to be heard on the adjudicative facts concerning" their properties subject to tax, "they have received all the process that is due." *Id.*  (citations omitted).  "There is no unfairness, much less a deprivation of due process, in [a municipality's] retention of any surplus." *Id*.

Here, because the applicable procedures do not afford a former property owner an avenue to obtain surplus equity, because Plaintiff received adequate notice of the forfeiture proceedings and an opportunity to redeem his property but failed to act, and because Plaintiff did not have a recognized property interest in the surplus equity once the foreclosure proceeding was completed and the subject property conveyed to the City in fee, Plaintiff has no constitutional claim for the surplus equity in his former property.  *See Nelson*, 352 U.S. at 110 ("What the City of New York has done is to foreclose real property

for charges four years delinquent and, in the absence of timely action to redeem or to recovery any surplus, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings."); *Sheehan*, 67 N.Y.2d at  60 ("There is no constitutional prohibition against such a full forfeiture."); *Miner*, 541 F.3d at 475 ("The retention of any surplus from a tax auction is constitutional because there was no violation of plaintiffs' right to due process related to the notices of foreclosure.").  Accordingly, the City's motion for summary judgment is granted as to any claim asserting an unconstitutional excessive fine or an unconstitutional taking.

## IV.    CONCLUSION

For the reasons set forth above, Defendant City of Oneida, New York's motion for summary judgment, Dkt. No. 43, is **GRANTED**.  The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 29, 2022

Thomas J. McAvoy
Senior, U.S. District Judge